# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RODNEY HOLMES,<br><br>              **Plaintiff**,<br><br>      v.<br><br>MARK CURRAN; LAKE COUNTY SHERIFF'S OFFICE; DAVID WATHEN; DOUGH LARSSON; RAYMOND ROSE; SERGEANT W.R. KINVILLE; and LAKE COUNTY,<br><br>              **Defendants**. | Case No. 17 C 3031<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodney Holmes alleges that he was the target of a malicious prosecution orchestrated by the Defendants. The Defendants now move to dismiss Holmes's complaint for failure to state a claim. For the reasons discussed below, that motion is granted in part and denied in part.

## I. BACKGROUND

Though the Complaint is thin on details, this is what the Court has been able to infer: Rodney Holmes was a Lake County Corrections Officer when an inmate, one Eugene Gruber, died. (Am. Compl. ¶ 14, Dkt. 7.) Holmes alleges that the Defendants "wanted a scape goat" for Gruber's death, especially given the approaching reelection bid by Defendant Curran, so they decided to frame Holmes, notwithstanding the Defendants' shared

understanding that Holmes "was innocent." (*Id.* ¶¶ 14, 17-18.) Holmes was indicted and tried in state court for the crime of official misconduct, but he was acquitted. Defendants Larsson and Rose allegedly "fabricated events" surrounding Gruber's death and communicated those fabrications to prosecutors and the grand jury (*id.* ¶ 18); Defendant Wathen authorized Defendant Larsson to participate in the grand jury proceedings (*id.* ¶ 16); Defendant Rose "spoke to the press" after Holmes's court dates and suggested he was a criminal (*id.* ¶ 19); and Defendant Kinville also allegedly lied to prosecutors and then falsely testified against Holmes at trial (*id.* ¶ 20).

After his acquittal, Holmes filed this four-count lawsuit, comprising: a due process claim arising from malicious prosecution; an unspecified Fourth Amendment claim, also arising from malicious prosecution; a malicious prosecution claim under Illinois law; and a claim seeking indemnification by Lake County and the Sheriff's Office of the other Defendants. *See,* 745 ILCS 10/9-102. Defendants now move to dismiss that Complaint for failure to state a claim. (Dkt. 16.) In weighing that Motion, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. **MALICIOUS PROSECUTION (COUNTS I, II, AND III)**

Malicious prosecution is not a free-standing, constitutional tort. *Hurt v. Wise,* 880 F.3d 831, 843 (7th Cir. 2018). Rather, a malicious prosecution claim must be predicated upon the violation of some other constitutional right, such as those provided by the Due Process Clause or the Fourth Amendment. *Id.* Here, Holmes brings three different varieties of malicious prosecution claims.

### A. Due Process Claim (Count I)

The Fourteenth Amendment's Due Process Clause is the relevant constitutional source for Count I. *Id.* at 843-44. But Holmes's due-process rights are not implicated by the evidence fabrication alleged here unless that evidence was "used to deprive [Holmes] of [his] liberty in some way." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012)). To cite the now-classic example, no infringement of liberty occurs when an officer fabricates evidence but merely keeps the phony proof in a drawer, making no further use of it. *Whitlock*, 682 F.3d at 582 (citing *Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994)).

But even when the prosecution uses fabricated evidence at trial, the defendant's due process claim is wiped away if he is released on bond and then acquitted. *See*, *Bianchi*, 818 F.3d at

320. In *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012), for example, a plaintiff pursued a due process claim based on fabricated evidence after he was arrested, immediately released on bond, and acquitted. The Seventh Circuit held that the acquittal foreclosed any due-process claim because "[i]t would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of trial is to *effectuate* due process.'" *Bianchi*, 818 F.3d at 321 (quoting *Alexander*, 692 F.3d at 557 n.2) (emphasis in original); *accord Saunders-El v. Rohde*, 778 F.3d 556, 558 (7th Cir. 2015) ("[D]ue process is not implicated when, as here, the defendant is released on bond following his arrest and acquitted at trial."); *cf. Hurt*, 880 F.3d at 843-44 (refusing to reverse denial of defendants' summary judgment motion based on qualified immunity where relevant plaintiff was detained pretrial, prosecutors used fabricated evidence against him, and he was acquitted).

Here, Holmes's Complaint recites that he was arrested, prosecuted, and acquitted of all charges. The Complaint nowhere explains whether Holmes was held in pretrial detention or else released on bond, although his response brief suggests the latter is true. (Resp. at 2, Dkt. 23 (reciting that Plaintiff was on bond).) The Defendants suggest the same and explain that

a so-called "Exhibit A" demonstrates that "Holmes did not spend any time in jail other than to be processed on the warrant." (Mem. in Supp. at 2-3, Dkt. 18.) The Court cannot verify these representations, however, because whatever "Exhibit A" might be is a mystery—it was not attached to Defendants' Motion nor filed elsewhere with the Court. To any extent, that Holmes was held in pretrial detention is not a "reasonable inference" that the Court must now draw from the Complaint, *Iqbal*, 556 U.S. at 678; rather, it is a wholly absent, and here-critical, allegation. Given that Holmes was acquitted, he cannot state a due process claim unless he was held in pretrial detention—as opposed to posting bond after his arrest. *See*, *Bianchi*, 818 F.3d at 321; *Saunders-El*, 778 F.3d at 558. His failure to allege that fact is fatal to his claim. If the briefing is mistaken, and Holmes was in fact held in pretrial detention, he may replead this Count. Count I is dismissed without prejudice.

### B. Fourth Amendment Claim (Count II)

"The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet*, 137 S. Ct. 911, 918-19 (2017). "That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a

judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification." *Id.* It makes no difference that Holmes's initial detention—his arrest—was authorized by a probable cause determination made by a grand jury and not by a judge. *Id.* at 920 n.8.

Holmes does not explain how any specific detention infringed his Fourth Amendment rights, though his Complaint does mention elsewhere that he was arrested. (Am. Compl. ¶¶ 32-33.) He also alleges that the charges against him were trumped-up and that the evidence presented to the grand jury was fabricated. (Am. Compl. ¶¶ 13-20.) By accepting these allegations as true and considering the plausibility of the Complaint as a whole, *see*, *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011), the Court concludes that Holmes's arrest was unsupported by probable cause and thus provides a basis for a Fourth Amendment claim.

Whether Holmes also intends to claim a Fourth Amendment violation stemming from any pretrial detention he suffered is another matter. As described above, Holmes has not alleged he was detained pretrial. This closes the matter for now, but the Court also notes the following for the sake of completeness. Until recently, the Seventh Circuit did not recognize Fourth

Amendment claims for allegedly unsupported, pretrial detentions. *See, Manuel v. City of Joliet*, 590 F. App'x 641, 643 (7th Cir. 2015), *rev'd and remanded*, *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017). Instead, plaintiffs challenging such detentions had to rely on the due process clause. *Id.* In 2015, the Seventh Circuit recognized that this was a minority position among the courts of appeals, but, rather than overruling settled circuit precedent, invited the Supreme Court to weigh in. *Id.* at 644. The Court did so, and held in *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017) that plaintiffs may state Fourth Amendment claims for post-legal-process detentions unsupported by probable cause (*i.e.,* pretrial detentions).

In sum, Count II survives insofar as it states a claim for unlawful arrest. If Holmes can in good faith allege that he was also unlawfully held in pretrial detention, he may amend Count II accordingly.

### C. Qualified Immunity Defense (Counts I and II)

The Defendants also argue Counts I and II should be dismissed on qualified immunity grounds. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (quoting

*Reichle v. Howards*, 566 U.S. 658, 664 (2012)). But generally speaking, "[b]ecause an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) (internal quotations and citations omitted). The Court will not deviate from that general rule here, so the qualified immunity argument affords Defendants' motion no additional traction.

**D. State Law Malicious Prosecution Claim (Count III)**

The Defendants move to dismiss this Count solely on the grounds that if the Court dismissed Counts I and II, the Court would no longer have subject matter jurisdiction to hear this case. But that presumption did not play out in Defendants' favor; Count II survived the Motion, so Defendants' only argument in support of dismissal fails. The Motion to Dismiss is denied as to Count III.

**III. <u>INDEMNIFICATION (COUNT IV)</u>**

In Count IV, Holmes seeks to have Lake County and the Sheriff's Office indemnify the other Defendants pursuant to 745 ILCS 10/9-102. Defendants move to dismiss this Count on two grounds. First, Defendants presumed again that once the Court

dismissed Counts I-III, there would be nothing left to indemnify. *See, Banske v. City of Calumet City*, No. 17 C 5263, 2018 WL 372145, at *3 (N.D. Ill. Jan. 11, 2018) (quoting *Benedix v. Vill. of Hanover Park*, No. 10 C 3072, 2010 WL 5099997, at *3 (N.D. Ill. Dec. 8, 2010), *aff'd*, 677 F.3d 317 (7th Cir. 2012)). But Defendants have failed to secure the dismissal of Counts II and III, so this argument falls apart. Second, Defendants contend that the Sheriff's Office is not a proper indemnitor. Defendants do not explain any specific rationale for this belief, although they cite to *Carver v. Sheriff of La Salle County*, 787 N.E.2d 127, 129 (Ill. 2003) and *Askew v. Sheriff of Cook County*, 568 F.3d 632, 637 (7th Cir. 2009). But those cases do not stand for the proposition that the Sheriff's Office can never be a proper indemnitor. Rather, the relevant takeaway from those cases is that Illinois statutes compel counties to indemnify (1) judgments entered against sheriffs and deputies in their personal capacities, *Carver,* 787 N.E.2d at 134 (citing 55 ILCS 5/5-1002) and (2) judgments entered against the sheriff in his official capacity, *Askew*, 568 F.3d at 636 (citing 745 ILCS 10/9-102). It is not clear what Defendants' argument is on this front, especially given that under section 9-102, "the Sheriff is required to pay any tort compensatory damages judgment for which he or an employee acting within the scope of his

employment is liable so long as the conduct was wilful *[sic]* and wanton." *Brown v. King*, 767 N.E.2d 357, 362 (Ill. App. Ct. 2001) (citation omitted); *but cf. Lewis v. Cook Cty. Corr. Officers*, No. 01 C 6318, 2002 WL 31133175, at *1 (N.D. Ill. July 19, 2002) (noting disagreement among courts regarding scope of sheriff's *respondeat superior* liability). The Court will not on this basis strike the Sheriff's Office from Count IV. *See, Cty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("[T]he district court . . . will not invent legal arguments for litigants.").

## IV. <u>INSUFFICIENT SERVICE OF PROCESS</u>

In a single line of their Motion to Dismiss, Defendants aver that Holmes failed to serve Defendants Larsson and Rose, which the Court reads as Defendants' belief that Larsson and Rose should be stricken from the complaint for insufficient service of process. FED. R. CIV. P. 12(b)(5). Holmes failed to respond to this contention in his briefing, and as such he concedes the failure of service. *See, A.C. v. Standard Bank & Tr. Co.*, No. 15 C 7693, 2016 WL 1407712, at *2 (N.D. Ill. Apr. 11, 2016) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument

against dismissing the claim."). The Court accordingly strikes Larsson and Rose from the Complaint.

V. **CONCLUSION**

For the reasons stated herein, Defendants' Motion to Dismiss [ECF No. 16] is granted in part and denied in part. Count I is dismissed without prejudice, and Defendants Larsson and Rose are dismissed given the insufficient service of process.

**IT IS SO ORDERED.**

_____  
Harry D. Leinenweber, Judge  
United States District Court

Dated: 6/12/2018